UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| SPORTS SOUTH, LLC, | ) | |
| | ) | Action No. 5:13-CV-266-JMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EARLEY M. JOHNSON, II, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*

This matter is before the Court upon the Joint Motion for Judgment on the Pleadings [D.E. 27] filed by Defendants Earley M. Johnson, II and Jennifer D. Arnett. Plaintiff filed a Response [D.E. 31], and Defendants filed a Reply. [D.E. 34]. This matter being fully briefed, and the Court being otherwise sufficiently advised, it is ripe for review.

**I. Procedural Background**

Security Safe Outlet, Inc. was a Kentucky corporation doing business in Paris, Kentucky. [D.E. 1 at 2; D.E. 10 at 1-2]. Security Safe applied for credit with Plaintiff Sports South, LLC [D.E. 32-10], and the application was approved. Sports South avers that it supplied Security Safe with hundreds of pieces of inventory between March 23, 2012 and December 14, 2012, and sent multiple invoices for the purchase price of the inventory. [D.E.

1 at 2]. According to Sports South, an amount equal to $279,733.25 remains unpaid. [D.E. 1 at 3].

Shortly after Sports South began supplying inventory to Security Safe, Johnson, the President of Security Safe, and Arnett, the Vice-President of Security Safe, executed identical personal guaranties in favor of Sports South, guaranteeing the debts of Security Safe. Each guaranty provides:

> In consideration of Sports South, LLC, at my request, giving or extending terms of credit to Security Safe Outlet, Inc. . . . hereinafter called debtor, I hereby give this continuing guaranty to said transferee or assigns, for the payment at full list price or any indebtedness, direct or contingent, of said debtor to said creditor, up to the amount four hundred thousand ($400,000) DOLLARS, whether due or to be become due and whether now existing or hereafter arising; and I hereby bind and obligate myself, my heirs and assigns, in solido, with said debtor, for the payment of the said indebtedness precisely as if the same had been contracted and was due and owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all the terms and conditions of sale or contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; and, waiving all notice and pleas of discussion and division, I agree to pay upon demand at any time to said creditor, its transferees, assigns or successors, the full list amount of said indebtedness up to the amount of this guaranty, together with interest, finance and service charges as set forth hereinabove. The creditor may extend or modify any obligation of the debtor one or more times and may surrender any securities held by it without notice or consent from me, and I shall remain at all times bound hereby, notwithstanding such extensions and/or surrender.
> It is hereby understood by the undersigned guarantor that should the total amount due hereunder remain unpaid by debtor and/or guarantor after the receipt by debtor and/or guarantor of 10 days written notice, then and in that event the undersigned

> guarantor hereby obligates himself to pay twenty-five (25%) percent of the total amount owed hereunder if this matter is placed in the hands of an attorney for collection.
> This guaranty shall be a continuing guaranty, and shall remain in full force and effect until terminated by written notice upon mutual consent of both the creditor and debtor by either certified or registered mail to the said creditor, its transferees or assigns, but such termination shall not affect or impair any liability hereunder at the time of such termination. . . .

[D.E. 1-2 at 2-3]. Sports South claims that it made a demand upon Defendants to pay the outstanding indebtedness incurred by Security Safe, in accordance with the above guaranty, but Defendants refused. [D.E. 1 at 3].

Subsequently, Sports South brought claims against Defendants for breach of contract. [D.E. 1 at 3-4]. Defendants now bring their joint motion for judgment on the pleadings claiming that the guaranties they executed are not enforceable under Kentucky law.

**II. Standard of Review**

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577,

581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)) (internal quotation marks omitted).

**III. Analysis**

The guaranties signed by Defendants do not comply with the requirements for a guaranty of indebtedness set out by Kentucky statute. Therefore, Defendants' Joint Motion for Judgment on the Pleadings must be granted.

The applicable statute provides:

> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

KRS 371.065(1). To be enforceable under Kentucky law, a guarantee "must: (1) be written on the instrument being guaranteed; or (2) expressly refer to the instrument being guaranteed; or (3) be signed by the guarantor and contain provisions specifying the amount of the maximum aggregate liability and the date on which the guaranty terminates." *BP*

4

*Prods. N. Am. Inc. v. McGuirk Oil Co.*, No. 1:10-cv-89-JHM, 2011 WL 2149627, at *3 (W.D. Ky. June 1, 2011) (citing *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609 (Ky. 2004)). The interpretation of the guaranty and statute is a question of law for the Court to decide. *See Smith v. Bethlehem Sand & Gravel Co.*, 342 S.W.3d 288, 291 (Ky. Ct. App. 2011) (citing *Cumberland Valley Contrs., Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)) (deeming whether a guaranty agreement complied with KRS 371.065 to be a question of law for the courts).

The parties acknowledge that the guaranties are not written on the instrument they guarantee. [D.E. 27-1 at 4] ("[T]hey are not written on the instrument that they purport to guarantee."); [D.E. 31-1 at 7 n.17] (stating that there are three methods to enforce a guaranty, but the only method at issue is the express reference to the instrument guaranteed). Additionally, Plaintiff does not argue that the guaranties specify the maximum aggregate liability and the date on which the guaranties terminate, *see* [D.E. 31-1 at 7 n.17], and the Court finds that there is no termination date within the guaranty. *See McGuirk Oil Co.*, 2011 WL 2149627, at *4 ("An unlimited guaranty that continues in perpetuity until the guarantor notifies the guarantee is not one that contains a provision specifying the date on [which] the guaranty terminates."). Thus, in order for the guaranties to be

valid, the guaranties must expressly refer to the instrument being guaranteed.

Plaintiff argues that the guaranties expressly referenced the instruments they covered through the use of the words "terms of credit" and "all the terms and conditions of sale." There is contention over whether "terms of credit" or "all the terms and conditions of sale" can be considered an instrument. However, even assuming "terms of credit" or "all the terms and conditions of sale" meet the definition of instrument, the guaranties fail to expressly reference either of these instruments.

A guaranty will meet the express reference requirement when "either (1) the *guaranty itself* . . . refer[s] to the instrument guaranteed, or (2) the guaranty . . . clearly refer[s] to a document, such as an exhibit or attachment, that references the instrument guaranteed." *Guangzhou Consortium Display Prod. Co. v. PNC Bank, N.A.*, 956 F. Supp. 2d 769, 791 (E.D. Ky. 2013) (citing *Smith v. Bethlehem Sand & Gravel Co.*, 342 S.W.3d 288 (Ky. Ct. App. 2011); *Banterra Bank v. Hendrick*, No. 5:09-cv-12-TBR, 2011 WL 832455 (W.D. Ky. Mar. 3, 2011)); *see also Howson v. JP Morgan Chase Bank, N.A.*, No. 2012-CA-001217-MR, 2013 WL 4779851 (Ky. Ct. App. Sept. 6, 2013) (finding the express reference method was not met where the number of a promissory note referenced at the top of the guaranty was not expressly linked to the terms of the guaranty); *Alliant Tax Credit Fund*

6

*31-A, Ltd. v. Murphy*, 494 F. App'x 561, 569 (6th Cir. 2012) (finding the instrument expressly referenced where the guaranty explicitly defined the term "Agreement" as a partnership agreement "dated as of December 8, 2003" and included specific provisions of that agreement); *Wells Fargo Fin. Leasing, Inc. v. Griffin*, No. 5:13-cv-75-TBR, 2013 WL 4776524, at *9 (W.D. Ky. Sept. 6, 2013) ("The Guaranties' only reference to the instrument purportedly guaranteed is to the 'lease/rental agreement,' but that term is not defined and there is no further description of what lease/rental agreement the Guaranties refer to."). The guaranties executed by Defendants do not expressly refer to the instrument guaranteed, either within the guaranties themselves or by referencing external documents, and, thus, the guaranties are not enforceable under Kentucky law.

Neither "terms of credit" nor "terms and conditions of sale" were defined in the guaranties themselves or another document referenced by the guaranties. In *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, an express reference was found where the guarantee "explicitly 'guarantee[d] obligations of the General Partner under the Agreement,' where the 'Agreement' [was] defined as the 'Amended and Restated Agreement of Limited Partnership dated as of December 8, 2003.'" 494 F. App'x 561, 569 (6th Cir. 2012). Similarly, our sister court found an express reference where the term "Note" was defined as

7

> [t]he promissory note from Borrower to Lender, bearing the same dates as this mortgage in the original amount equal to the maximum lien amount of this mortgage, together will all renewals or replacements of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

*Banterra Bank v. Hendrick*, No. 5:09-cv-12-TBR, 2011 WL 832455, at *9 (W.D. Ky. Mar. 3, 2011). The court also noted that the guaranty, promissory note, and mortgage were all dated October 30, 2006, with the mortgage expressly referring to the maximum line of credit. *Id.* There is no definition of "terms of credit" or "all the terms and conditions of sale" in the guaranties executed by Defendants. Additionally, there has been no evidence presented that the credit instrument and guaranties were attached. *See Brunswick Bowling & Billiards v. Ng-Cadlaon*, No. 2010-CA-001844-MR, 2011 WL 5244971, at *2 (Ky. Ct. App. Nov. 4, 2011) ("By contrast, the guaranty signed by Ng-Cadlaon was not attached to the note." (citing *Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous., L.L.C.*, 663 F. Supp. 2d 575 (E.D. Ky. 2009))). Thus, there is no language contained in either guaranty, or an attachment to either guaranty, that allows the Court to determine to what instrument or document "terms of credit" or "all the terms and conditions of sale" refers.

The facts at hand most resemble those of *Wells Fargo Financial Leasing, Inc. v. Griffin*, where the court found that

the guaranty could not be enforced. No. 5:13-cv-75-TBR, 2013 WL 4776524, at *9 (W.D. Ky. Sept. 6, 2013).

> The Guaranties' only reference to the instrument purportedly guaranteed is to the "lease/rental agreement," but that term is not defined and there is no further description of what lease/rental agreement the Guaranties refer to. The Guaranties make no reference to, or mention of, the parties to that lease/rental agreement, nor is there any reference to the date of that lease/rental agreement, its terms or provisions, or any other information to give any specificity to what lease/rental agreement the Guaranties purport to guarantee.

*Id.* Here, the agreement specifies the parties to the "terms of credit" agreement, but that is all. At most, this creates an inference of the debts Defendants agreed to guarantee, but a mere inference does not amount to an express reference. *See id.* ("[A]t best [the facts] support the inference that the Guaranties were intended to guarantee SE Book's obligations under the Master Agreements; however, such an inference is insufficient to satisfy § 371.065(1)'s requirement that a guaranty *expressly* refer to the instrument being guaranteed.").

Furthermore, that Sports South and Security Safe had an agreement that falls into one of the broad categories described in the guaranties is of no consequence.

> The guaranty signed by [defendant] does not expressly refer to the instrument being guaranteed but rather binds her to a broad range of potential present and future obligations. The fact that the note at issue falls within one of the categories of obligations listed in the guaranty is insufficient in itself to constitute an express reference.

9

*Brunswick Bowling*, 2011 WL 5244971, at *2.

Moreover, Plaintiff does not argue that it had a single all-encompassing credit agreement with Security Safe to which the phrase "terms of credit" or "all the terms and conditions of sale" applies. Rather, Plaintiff argues that "[t]he Invoices are the instruments that set forth the indebtedness based on 'all the terms and conditions of sale' arising from Sports South's extension of its 'terms of credit' to Security Safe as set forth in the instruments governing Security Safe's account with Sports South." [D.E. 31-1 at 11]. The Kentucky Court of Appeals has found there was no express reference to an instrument being guaranteed when the guaranty explicitly listed the borrower and loan number of the loan guaranteed, but had "no language linking the terms of the guaranty agreement to the reference number or the promissory note." *Howson*, 2013 WL 4779851, at *2. In the face of this case law, the Court cannot find that the generic phrases "terms of credit" and "all the terms and conditions of sale" linked the terms of the guaranty agreements to multiple documents created on multiple days, especially given that no account number is referenced in either guaranty and nothing provided to the Court evidences that any of the multiple documents to which Plaintiff refers were actually titled "terms of credit" or "all the terms and conditions of sale."

Plaintiff also argues that the parties knew the debts the guaranties were intended to cover, and, thus, extrinsic evidence should be allowed, which would allow the Court to find an express reference. The Court finds this unpersuasive, as a similar argument has been rejected by the Kentucky Court of Appeals.

> [Guarantee] contends that [guarantor] knew very well what she was signing and that she cannot pretend that she did not know the nature or extent of her liability under the guaranty. But if the guaranty is indeed unambiguous, we may not consider extrinsic evidence such as what [guarantor] knew or intended when she signed the guaranty. . . . Moreover, [guarantees] were free to draft the guaranty with sufficient specificity to comply with the requirements of KRS 371.065(1).

*Brunswick Bowling*, 2011 WL 5244971, at *2).

Both guaranties appear to be boilerplate, and each guaranty has a portion of the boilerplate provisions crossed out. [D.E. 1-2 at 2-3]. Plaintiff argues that the Court should look at the crossed out portions because the crossed out terms match the terms on which financing was extended to Security Safe. [D.E. 31-1 at 10]. However, these terms, as they were crossed out, did not become part of the agreement between Plaintiff and Defendants. The Court does not find, and Plaintiff does not argue, that the agreement is ambiguous. Therefore, these crossed out provisions are extrinsic evidence that cannot be considered by the Court. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) ("'[I]n the absence of ambiguity a written

instrument will be enforced according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." (citations omitted)).

Plaintiff's final argument, that the statute is a consumer protection provision and should not be used to protect Defendants from their obligations, is similarly without merit. In making this argument, Plaintiff relies on this Court's interpretation of a Kentucky Court of Appeals decision, *Intercargo Insurance Co. v. B.W. Farrell, Inc.*, 89 S.W.3d 422. *See* [D.E. 31-1 at 7]; *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 663 F. Supp. 2d 575, 581 (E.D. Ky. 2009) ("The court rejected an argument that 'the legislature also intended to protect sophisticated businessmen and corporate executives from their own promises when they pledge their individual assets to secure performance bonds for their corporate ventures.'" (quoting *Intercargo*, 89 S.W.3d at 426))). However, this is only persuasive authority when interpreting the Kentucky statute. *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 608 (6th Cir. 2005) ("When and how state law applies to a particular case is a matter on which the state supreme court has the last word. We only anticipate how the state's supreme court would rule on an - issue of state law when the law is unsettled.").

The Kentucky Supreme Court has interpreted the statute as applying to "all guaranties." *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 613 (Ky. 2004). Additionally, the only portion of the statute that the Kentucky Supreme Court explicitly called a "consumer-protection provision" was the provision allowing for compliance with the statute by stating the maximum aggregate liability and termination date in the guaranty. *Id.* at 615 ("KRS 371.065's requirement that a guaranty state the guarantor's maximum liability and the guaranty's termination date is a consumer-protection provision . . . ."). Plaintiff itself noted that this provision was not applicable to this case [D.E. 31-1 at 7 n.17], so the portion of the statute specifically meant to protect consumers is not at issue.

Furthermore, *Intercargo* does not stand for the proposition that all guaranties executed by sophisticated businessmen are valid, without regard to the requirements of KRS 371.065. In *Intercargo*, the court did state that the statute was not meant to provide sophisticated businessmen "*carte blanche* to renege on their contractual obligations." *Intercargo Ins. Co.*, 89 S.W.3d at 427. However, this cannot be read as stating that the statute only applies to consumers because the Kentucky Court of Appeals had previously noted, in the same paragraph, that the purpose of the statute was "to protect persons *or entities* who guarantee the extension of credit to third persons . . . ." *Intercargo*, 89

13

S.W.3d at 427 (emphasis added). The Kentucky Court of Appeals could not have meant that the statute only applied to consumers when it explicitly stated one purpose of the statute was to protect entities. *See* Black's Law Dictionary 139 (3d pocket ed. 2006) ("consumer. A person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes."). Based on the foregoing, the Court will not read *Intercargo* to mean that a guaranty wholly failing to make an attempt to comply with KRS 371.065 should be upheld merely because a sophisticated business person is involved, especially when the party drafting the guaranty in contravention of the plain language of the statute is an equally sophisticated business entity.

**IV. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED:**

(1) that the Joint Motion for Judgment on the Pleadings [D.E. 27] filed by Defendants Earley M. Johnson, II and Jennifer D. Arnett shall be, and the same hereby is, **GRANTED**;

(2) that Plaintiff's claims against Defendants Earley M. Johnson, II and Jennifer D. Arnett be, and the same hereby are, **DISMISSED WITH PREJUDICE**;

(3) that Plaintiff's Motion for Summary Judgment as to the claims against Defendants Earley M. Johnson, II and Jennifer D. Arnett [D.E. 32] be, and the same hereby is, **DENIED AS MOOT**.[1]

This the 27th day of February, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

---

[1] Plaintiff's Motion for Summary Judgment as to the claims against Defendant Security Safe Outlet, Inc. [D.E. 32] remains pending.