UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| SPORTS SOUTH, LLC, | ) |
| Plaintiff, | ) Civil Case No. |
|  | ) 5:13-cv-266-JMH-REW |
| v. | ) |
|  | ) **MEMORANDUM OPINION** |
| EARLEY M. JOHNSON, II, et al., | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment filed by Plaintiff Sports South, LLC and Defendant Security Safe Outlet, Inc. [D.E. 32, 43]. This matter being fully briefed, and the Court being otherwise sufficiently advised, it is ripe for review.

**I. Procedural Background**

Security Safe Outlet, Inc. was a Kentucky corporation doing business in Paris, Kentucky. [D.E. 1 at 2; D.E. 10 at 1-2]. Security Safe applied for credit with Plaintiff Sports South, LLC [D.E. 32-10], and the application was approved. Sports South avers that it supplied Security Safe with hundreds of pieces of inventory between March 23, 2012 and December 14, 2012, and sent multiple invoices for the purchase price of the inventory. [D.E. 1 at 2]. According to Sports South, an amount equal to $279,733.25 remains unpaid. [D.E. 1 at 3]. Security Safe admits

in its Answer that it ordered and received goods from Sports South, but disputes the amount owed. [D.E. 12 at 2].

Sports South filed a complaint against Security Safe, Earley M. Johnson II, President of Security Safe, and Jennifer D. Arnett, Vice-President of Security Safe, for breach of contract. The Court previously granted Defendants Johnson and Arnett's Motion for Judgment on the Pleadings and dismissed Sports South's claims against Johnson and Arnett. [D.E. 40]. Sports South and Security Safe have now filed cross-motions for summary judgment on Sports South's breach of contract claim against Security Safe.

**II. Standard of Review**

A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Analysis**

There remain genuine issues of material fact as to the total amount owed by Security Safe, thus the Court will deny the cross-motions for summary judgment. Sports South claims that because Security Safe admits that it ordered goods, that it received those goods, and that Sports South has established the debt owed by Security Safe, the Court should enter judgment against Security Safe, with pre- and post-judgment interest. Security Safe argues that Sports South's claim is barred by the statute of frauds, and, alternatively, that genuine issues of material fact exist as to the terms of the credit agreement and balance owed by Security Safe.

It is undisputed that Sports South and Security Safe entered into an agreement for the sale of goods. *See* KRS 355.2-105(1) ("'Goods' means all things . . . which are movable at the time of identification to the contract of sale other than the money in which the price is to be paid, investment securities . . . and things in action."); [D.E. 12 at 2] (admitting that Security Safe placed orders and received merchandise). Defendant argues that KRS 371.010(9), Kentucky's statute of frauds for credit agreements bars this action. Plaintiff responds that the statute of frauds does not apply, and, if it does, the statute

3

of frauds within Kentucky's Uniform Commercial Code (UCC) controls. The Court finds that the sale of goods is partially within the statute of frauds, and that the UCC controls.

In determining that the UCC statute of frauds controls this action, the Court finds the reasoning of *Automated Cutting Technologies, Inc. v. BJS North America E, Inc.* to be persuasive.

> As other courts confronting the issue of dual statutes have held, the UCC's statute of frauds controls where it applies. The Court finds that, as a specific section addressing the requirement of a writing, and the enforceability of that writing, section 2-201 acts to preempt [KRS] 371.010. The latter is 'displaced by the particular provisions of the Uniform Commercial Code,' KRS 355.1-103(2), and thus does not apply to transactions in goods. Section 2-201 provides the decisional basis.

*Automated Cutting Techs., Inc. v. BJS N. Am. E, Inc.*, No. 5:10-cv-208-REW, 2012 WL 2872823, at *4 (E.D. Ky. July 12, 2012). Thus, KRS 355.2-201 applies to this action, not KRS 371.010(9).

Multiple contracts were created between Sports South and Security Safe and not all of those contracts are subject to the statute of frauds. Sports South argues that the amount owed on the contract has been established by the multiple invoices sent to Security Safe. In their briefing, the parties did not discuss whether this was a breach of a single contract for the sale of goods or multiple contracts for the sale of goods. The only evidence of a contract are the invoices provided by Sports South

4

and the internal balance sheet provided by Security Safe. The parties claim that the goods were ordered via purchase order. Thus, the Court finds that each purchase order constituted an offer to purchase and the shipping of the goods constituted an acceptance of the offer. *See McJunkin Corp. v. Mechanicals, Inc.*, 888 F.2d 481, 487 (6th Cir. 1989) ("[B]y shipping the stub ends, Alaskan accepted McJunkin's offer (made in McJunkin's purchase order) . . . ."). Therefore, multiple contracts for the sale of goods were created.

The UCC requires all contracts for the sale of goods for $500 or more to be in writing and "indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." KRS 355.2-201(1). To be valid, the contract must state the quantity term. *Id.* The Court has reviewed the invoices and not every contract is subject to the statute of frauds because some of the orders were for less than $500. Thus, the Court must determine if a contract has been proved for those orders governed by the statute of frauds and for those contracts not governed by the statute of frauds.

The Court turns first to those contracts governed by the statute of frauds. Security Safe is barred from asserting the statute of frauds as a defense to the contracts for $500 or more

5

because it has admitted that it placed orders with Sports South and received the goods ordered. *See* [D.E. 12 at 2].

> If the making of a contract is admitted in court, . . . no additional writing is necessary for protection against fraud. . . . [I]t is no longer possible to admit the contract in court and still treat the Statute as a defense. . . . The admission so made by a party is itself evidential against him of the truth of the facts so admitted and of nothing more. . . .

KRS 355.2-201 cmt. 7. Security Safe has admitted that it placed purchase orders with Sports South, that it received those goods from Sports South, and that it received invoices for those goods. [D.E. 12 at 2]. Thus, Security Safe has admitted that a contract was made. However, the amount of goods received, the amount of goods ordered, and the total amount billed have not been admitted by Security Safe. Thus, the Court finds that Security Safe has admitted there was a binding contract, but the terms of the contract and the outstanding balance have not been admitted.

As to those invoices not governed by the statute of frauds, there likewise remain genuine issues of material fact as to the terms of the agreement and the outstanding balance. Security Safe admitted that it ordered goods from Sports South and that it received those goods. [D.E. 12 at 2]. Thus, both parties agree that a contract was made, but disagree as to the terms and the outstanding balance on the contracts.

6

Sports South argues that under the Restatement (Second) of Contracts the invoices became the terms of the contracts because Security Safe did not object to the invoices. [D.E. 51 at 1-2]. Sports South relies on the "Account Stated" provision of the Restatement (Second) of Contracts, which provides that "[a]n account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account . . . is a manifestation of assent." Restatement (Second) of Contracts § 282 (1981). Thus, according to Sports South, Security Safe has assented to the outstanding balance of $279,733.25. This argument is flawed because the invoices do not state an outstanding balance. Each invoice only states the amount due for that particular sale. Sports South has not provided evidence that Security Safe was provided notice of the outstanding balance and failed to object, which is what is contemplated by the provision upon which Sports South relies. The individual invoice has no bearing on the total account because it does not reflect prior orders, payments, returns, or an unpaid balance. In short, Sports South provided a statement of an individual order, not a statement of the account. Thus, the Court finds § 282 of the Restatement (Second) of Contracts inapplicable to the facts at hand. Therefore, based only on Security Safe's

7

admissions before this Court, genuine issues of material fact remain as to the terms of the contracts governed by the statute of frauds and those not governed by the statute of frauds.

The evidence presented on the terms of the contracts and the outstanding balance does not resolve the genuine issues of material fact. The only evidence presented on the issue of the amount outstanding on Security Safe's account are invoices and a customer account statement filed by Sports South, and an affidavit and internal balance sheet filed by Security Safe. "When the company established its account and the balance due, the burden then shifted to defendants to establish payment, satisfaction, or that the account was incorrect. . . ." *H.C. Whitmer Co. v. Richardson*, 111 S.W.2d 577, 579 (Ky. 1937). Sports South has met its burden by providing invoices and a customer account statement as to the amount owed by Security Safe. However, Security Safe has also provided evidence asserting that the account is incorrect.

A review of the customer account statement provided by Sports South shows that, from March 23, 2012 to the end of 2012, Sports South billed Security Safe for $304,242.15. The customer account statement also reflects credits of $24,508.90. While also denoted as "payment" on the customer account statement, each credit is notated with "CR" and, in its briefs before this Court, Sports South maintains that these amounts are "credits

8

awarded to Security Safe." [D.E. 51 at 3]. Thus, based on the evidence presented by Sports South, Sports South has no record of Security Safe making any payments after March 23, 2012.

Alternatively, based upon the records provided by Security Safe for the same time period, Sports South billed Security Safe for $418,081.42, and awarded a credit of $56,560.28. Security Safe's evidence shows payments in the amount of $273,998.67. Additionally, Security Safe's records show that $9,000 was paid in 2013. Security Safe further maintains that it sent $60,000 worth of goods back to Sports South and has not been informed how, or if, those goods were credited back to Security Safe's account. [D.E. 43-3 at 3]. Thus, the only evidence presented to the Court is contradictory in every aspect except that these two parties entered into a contract. Therefore, the terms of the contracts and the outstanding balance owed by Security Safe are genuine issues of material fact that must be determined at trial. This will require evidence of the amount billed, the amount of payments made, the amount of goods returned, and the amount of credits that were, and should have been, awarded.

Sports South argues that the Court should not rely on the evidence provided by Security Safe because it is not trustworthy and does not fall under the business records exception to the hearsay rule. While the Court agrees with Sports South that the totals appear to be incorrect, the evidence provided clearly

9

denotes payments, bills, and credits. The records are accompanied by an affidavit signed by the Vice-President of Security Safe swearing that she was in charge of maintaining the books and records and that the records are made at or near the time of the transaction, and that the provided copies are true and accurate. [D.E. 43-3 at 2-3]. Additionally, Security Safe also questions the trustworthiness of Sports South's records by noting that the supporting affidavit for the customer account statement is inconsistent with the customer account statement. [D.E. 42 at 5]. In light of this, the Court will not exclude the business records on a motion for summary judgment based upon an error in addition and subtraction.

IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 32] be, and the same hereby is, **DENIED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 43] be, and the same hereby is, **DENIED**.

This the 1st day of May, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge